UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEMINI INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| VS. | § § § | CIVIL ACTION NO. H-17-1044 |
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. B0973MA1305152 ISSUED THROUGH THE OFFICES OF OSPREY UNDERWRITING AGENCY LIMITED, | § § § § § § § | |
| Defendant. | | |

**ORDER DISSOLVING TEMPORARY RESTRAINING ORDER AND DENYING APPLICATION FOR PRELIMINARY INJUNCTION**

The plaintiff, Gemini Insurance Company, issued a maritime liability insurance policy to Galveston Bay Energy, LLC. The defendants, Lloyd's Underwriters, underwrote another policy issued to Galveston Bay through the Osprey Underwriting Agency. Gemini and the Lloyd's defendants disputed whether the defendants were obliged to help fund a settlement in a personal injury suit against their mutual insured, Galveston Bay Energy, LLC. The defendants invoked an arbitration clause in the Galveston Bay policy and filed an arbitration in England seeking a declaration that they did not have to fund the settlement. Galveston Bay assigned its right to recover on the policy to Gemini in exchange for an additional payment toward the settlement. Gemini brought this subrogated suit in Texas state court, seeking a temporary restraining order and preliminary injunction barring the defendants from pursuing the London arbitration. The state court

1

granted a temporary restraining order. The defendants timely removed.[1] This court set a hearing on the application for preliminary injunction. The defendants filed a brief in opposition to the motion for preliminary injunction and the plaintiffs filed a reply. The court held a hearing on April 12, 2017, at which counsel presented oral argument.

Based on the briefs, arguments, and applicable law, the temporary restraining order is dissolved and the application for a preliminary injunction is denied. The reasons are explained in detail below.

**I.     Background**

This is an insurance coverage dispute arising from an underlying personal injury suit. Paul Blasingame was injured in a maritime accident and sued Galveston Bay Energy, LLC, in Texas state court. Galveston Bay had several relevant insurance policies in effect at the time of Mr. Blasingame's injury, including a policy issued by Gemini and a policy issued by the Lloyd's underwriter defendants via Osprey Underwriting Agency, Ltd. In this suit, Gemini alleges that all insurers except Osprey funded a settlement that resolved the underlying Blasingame litigation and that, in exchange for Gemini covering a larger part of the settlement than its pro rata share, Galveston Bay assigned its rights under the Osprey contract to Gemini. Gemini alleges that the Osprey policy covered the Blasingame settlement and that the Lloyd's defendants were obliged to pay.

On March 17, 2017, Osprey notified Galveston Bay and the other insurers that it had begun an arbitration proceeding in England seeking a determination that it did not owe any money toward the Blasingame settlement. Gemini sued in Texas state court, alleging that it was subrogated to

---

[1] This court has jurisdiction under 9 U.S.C. § 205.

Galveston Bay's rights under the insurance contract and asserting various contract and quasi-contract theories. The state-court petition also sought a temporary restraining order, preliminary injunction, and permanent injunction preventing Osprey from pursuing the English arbitration. The state court granted the TRO.

The Osprey maritime liability policy (which the Lloyd's defendants underwrote) contains two relevant provisions. The "Law and Practice Clause" provides for arbitration of all disputes in England:

> Notwithstanding anything else to the contrary, this insurance is subject to English law and practice and any dispute under or in connection with this insurance is to be referred to Arbitration in London, one Arbitrator to be nominated by the Assured and the other by Osprey on behalf of Underwriters. The Arbitration shall be conducted pursuant to exclusive supervision of the English High Court of Justice. In case the Arbitrators shall not agree, then the dispute shall be submitted to an Umpire to be appointed by them. The award of the Arbitrators or the Umpire shall be final and binding upon both parties. In the event of a conflict between this clause and any other provision of this insurance, this clause shall prevail and the right of either party to commence proceedings before any other Court or Tribunal in any other jurisdiction shall be limited to the process of enforcement of any award hereunder.

(Docket Entry No. 5-2, Ex. B at 27).

The policy also contains a "Service of Suit" clause:

> It is agreed that in the event of the failure of the Underwriters severally subscribing to this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.
>
> Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to remove an action to a United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.
>
> Subject to the Underwriters' rights set forth above:

3

(a) It is further agreed that the Assured may serve process upon any senior partner in the firm of:

Mendes & Mount (Attorneys), 750 Seventh Avenue, New York N.Y.10019-6829

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

(b) The abovenamed are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

(c) The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgagee under a ship mortgage which is specifically named as a loss payee in this
insurance and any person succeeding to the rights of any such mortgagee.

. . .

Subject, in all respects, to the Osprey Law and Practice Clause as contained in the clauses dated 1.04.96.

(*Id.* at 25-26).

## II. The Legal Standards

### a. Preliminary Injunctions

A preliminary injunction is an "extraordinary remedy." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 536 (5th Cir. 2013). A court may grant a preliminary injunction "only if the movant establishes (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Id.* at 536-37 (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).

4

### b. Arbitration

This arbitration clause is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, an international treaty implemented through 9 U.S.C. §§ 201-208, known as the Convention Act. Under the Convention Act, the substantive law of the Federal Arbitration Act applies except to the extent that the Convention Act conflicts. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). The parties have not identified any divergence or conflict between the FAA and the Convention Act as applied to this case, and none appear on the record. The FAA caselaw applies.

The Convention Act requires enforcement of an arbitration agreement if four conditions are met. The four conditions add up to substantially the same inquiry the court performs in the commercial arbitration context:

> a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; "(3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Id.* (citing *Sedco*, 767 F.2d at 1146). Once "these requirements are met, the Convention requires the district court [ ] to order arbitration," *id.*, "unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *Sedco*, 767 F.2d at 1146 (quoting Convention, Article II(3)).

*Freudensprung*, 379 F.3d at 339. There is no dispute that the agreement is in writing, that it provides for arbitration in a Convention signatory nation, that it arises from a commercial relationship, or that one party is a noncitizen. The disputes are whether there is an arbitration agreement, and whether it requires arbitration of this claim.

Determining whether a suit must be arbitrated is typically a two-step process. Generally, issues of contract formation (including the existence of an arbitration agreement) are decided under state law and are gateway issues for the court. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199,

201 (5th Cir. 2016). The court also generally determines whether the scope of the arbitration agreement covers the claims before it. If the claims are within the scope of the arbitration clause, the court must compel arbitration. *Id.* But the parties may also agree to delegate that scope determination to the arbitrator by using a "delegation clause." *Id.*

When an arbitration agreement contains a delegation clause, the analysis changes. The Fifth Circuit recently clarified that

> [e]nforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement. Ordinarily both steps are questions for the court. *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

*Id.* at 201-02.

A delegation clause decisively "transfer[s] the court's power to decide arbitrability questions to the arbitrator." *Id.* at 202. The clause "requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). Under this approach,

> if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.

*Id.*

Delegation clauses can be explicit or implicit. An explicit delegation clause states that the arbitrator has the power to determine her own jurisdiction or to determine whether specific claims

6

are arbitrable. An implicit delegation clause incorporates some body of rules or law that, in turn, provides that the arbitrator is to have the power to determine her own jurisdiction or to rule on arbitrability in the first instance. For example, incorporating the AAA rules into an arbitration agreement makes threshold questions of arbitrability questions for the arbitrator to decide, rather than the court. Incorporating the AAA rules by reference is the functional equivalent of agreeing to arbitrate arbitrability. *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). The AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Petrofac*, 687 F.3d at 675 (quoting AAA rules) (internal quotation marks omitted). Incorporation "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* (citing cases from the First, Second, Eighth, Eleventh, and Federal Circuits).

Like the AAA rules, English law defaults to delegation: Section 30 of the 1996 Arbitration Act provides that "the arbitral tribunal may rule on its own substantive jurisdiction" absent an agreement to the contrary by the parties.

## III. Analysis

Gemini advances two core arguments. The first is that the "Law and Practice" provision in the Lloyd's/Osprey policy does not delegate the determination of whether this specific suit is arbitrable to the arbitrator, because incorporation of English law does not evince clear and unmistakable intent to delegate that power. In a supplemental brief, Gemini cites the Ninth Circuit's opinion in *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 921 (9th Cir. 2011). That court held that a similar English-law provision in an arbitration clause was not sufficient to make English arbitrability law, rather than federal arbitrability law, apply. Although the opinion did not use the

7

precise nomenclature, the Ninth Circuit effectively held that specifying English law was not an implicit delegation clause. Gemini also argues that the Fifth Circuit's *Crawford* opinion is distinguishable based on the specific language of the AAA rules. Gemini argues that the AAA rules use mandatory language in describing the arbitrator's power to rule on arbitrability, while the English rules are phrased permissively, indicating that the arbitrator "may" decide arbitrability issues.

Gemini's second argument is that the "Service of Suit" provision is more specific than the "Law and Practice" provision, and therefore governs under the ordinary rule that specific provisions trump general provisions. *E.g.*, *Matter of Pirani*, 824 F.3d 483 (5th Cir. 2016). Gemini argues that reading the contract as a whole and giving meaning to each clause requires the court to interpret the "Service of Suit" provision as a carveout from the broad and general arbitration agreement in the "Law and Practice" provision. Because the "Service of Suit" clause applies to a narrower universe of claims—only actions for "failure . . . to pay any amount claimed to be due" as opposed to the broader "any dispute under or in connection with" the policy—it governs.

In response, the defendants argue that incorporation of English law is an implicit delegation, making the only question before this court whether there is an agreement to arbitrate *some* set of claims. If the court finds that there is such an agreement, determining whether *this* claim should be arbitrated is for the arbitrator, not the court.

Second, the defendants argue that the "Law and Practice" clause in the policy is a valid arbitration agreement that overrides the "Service of Suit" provision. The "Law and Practice" clause explicitly overrides contract language that conflicts with its broad arbitration provision. The "Service of Suit" provision is explicitly made "[s]ubject, in all respects, to the Osprey Law and Practice Clause . . . ." The defendants cite the Fifth Circuit's opinion in *McDermott Int'l, Inc. v.*

8

*Lloyds Underwriters of London*, 944 F.2d 1199, 1200 (5th Cir. 1991). That case addressed extremely similar arbitration and service-of-suit provisions and found reasonable readings of the two clauses that made them compatible, not conflicting. Due to its procedural posture, the court did not explicitly hold that the clauses did not conflict and the arbitration clause governed. Instead, it held that harmonizing the clauses by limiting the "Service of Suit" provision to actions to enforce arbitration awards issued under the "Law and Practice" provision was a reasonable and permissible interpretation of the contract.

The defendants also cite a Florida intermediate appellate decision addressing nearly identical clauses and arguments. There, the Florida state appellate court harmonized the provisions as the Fifth Circuit did in *McDermott* and as the defendants argue here. *Lloyds Underwriters v. Netterstrom*, 17 So. 3d 732, 736 (Fla. Dist. Ct. App. 2009). In the alternative, the Florida court held that, even if the provisions conflicted, the arbitration provision would control. The arbitration provision clearly and explicitly states that it overrules any conflicting language in the contract as to where a party could seek remedies for breach. The service-of-suit provision does not have this language. Therefore, if the two provisions conflict, the arbitration provision carries the day. *Id.*

At the hearing, the defendants also pointed out that the insurance policy at issue here has a summary of its terms on the first few pages. On the second page, the policy has an entry that reads "Choice of law and jurisdiction: As per Osprey Law and Practice Clause."

The defendants' arguments are supported by the applicable law and the record in this case. First, the "Law and Practice" provision contains an implicit delegation clause because it requires arbitration under English law. Gemini's argument that this is not a sufficiently clear statement of intent to delegate threshold arbitrability issues is unpersuasive. Incorporation of English law includes English arbitration law, which unambiguously provides that arbitrators have the power to

9

decide threshold questions as a default unless the parties agree to the contrary. The parties did not do so here. By agreeing to arbitrate under English law, the parties clearly and unmistakably consented to delegate to the arbitrator the power to make threshold determinations about what claims are arbitrable.

Gemini's citation to the Ninth Circuit's opinion in *Cape Flattery* is unavailing. The Ninth Circuit's reasoning in that case was that unless an arbitration clause specifically identifies what body of rules should apply to the arbitrability determination, federal law was the overriding default option. 647 F.3d at 920-21. That reasoning is flatly incompatible with the Fifth Circuit's approach in *Crawford*. In *Crawford*, like *Cape Flattery*, the arbitration agreement was silent as to what body of law would apply to arbitrability questions; the only choice-of-law provision that the court analyzed was a provision that the case would be arbitrated under the AAA rules. Unlike the Ninth Circuit, the Fifth Circuit did not treat silence on the issue of whether federal or some other body of arbitrability law governed as an ambiguity requiring the court to decide arbitrabilty under federal arbitration law. Instead, the Fifth Circuit looked to the content of the specified body of law, found that the AAA rules gave the arbitrator the power to decide threshold arbitrability issues, and held that the agreement therefore contained an implicit delegation clause. *Crawford*, 748 F.3d at 262-63.

Gemini's effort to distinguish *Crawford* is unpersuasive. The basis for the proposed distinction is that the AAA rule is phrased in mandatory terms while the English Arbitration Act is phrased in permissive terms. Therefore, Gemini says, incorporation of English law does not provide clear and unmistakable evidence that the parties intended to delegate arbitrability issues to the arbitrator. The language of the respective rules does not support Gemini's characterization. The AAA rule the *Crawford* panel addressed stated that "[t]he arbitrator shall have the power to rule on

10

his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id.* at 262. Section 30 of the English Arbitration Act of 1996 states that "the arbitral tribunal may rule on its own substantive jurisdiction . . . ." There is no meaningful difference between the phrase "shall have the power to rule on" and the phrase "may rule on." Each indicates the same idea: the arbitrator has the power to decide arbitrability.

The Fifth Circuit's opinion in *Crawford* controls here. Because incorporation of English law is an implicit delegation clause, the only issue before this court is whether there is an agreement to arbitrate some set of claims. If there is, this case must be sent to arbitration for the arbitrator to decide whether a particular claim is arbitrable and, if so, to submit it to arbitration.

While Gemini initially argued in its state-court petition that there was no valid arbitration provision, in its reply and at the hearing it changed its position. Instead, it argued that the "Law and Practice" provision was a valid arbitration agreement that governed most potential claims arising out of the policy, but that the more specific "Service of Suit" provision overrode that arbitration agreement for claims for "failure . . . to pay any amount claimed to be due" under the policy. Gemini's concession that there is a valid arbitration agreement means that, given the delegation clause, the arbitrator decides whether the present claims are arbitrable. *Kubala*, 830 F.3d at 202. Gemini's argument that the claim here is covered by the "Service of Suit" provision rather than the "Law and Practice" provision is properly directed to the arbitrator.

Additionally, the policy requires arbitration. The policy specifies in its summary section that choice of law and jurisdiction are governed by the "Law and Practice" clause. The "Law and Practice" clause states that arbitration in England is required "[n]otwithstanding anything else to the contrary . . . ." It then adds suspenders to that belt, emphasizing that "[i]n the event of a conflict

between this clause and any other provision of this insurance, this clause shall prevail and the right of either party to commence proceedings before any other Court or Tribunal in any other jurisdiction shall be limited to the process of enforcement of any award hereunder." The "Service of Suit" provision is explicitly subordinated to the "Law and Practice" provision: after describing the various rights and obligations of the parties, it states that it is "[s]ubject, in all respects, to the Osprey Law and Practice Clause . . . ."

This court finds persuasive the the Fifth Circuit's and the Florida appellate court's harmonizing interpretation. The best way to harmonize these two provisions is not, as Gemini suggests, to treat the "Service of Suit" provision as a carve-out from the "Law and Practice" provision's broad sweep. While Gemini is correct that, all else equal, specific provisions control over general provisions, that principle of construction cannot override clear contract language. The contract language cannot bear the interpretation that Gemini suggests. The "Law and Practice" provision is broad; it states that no other provision of the contract can alter the strict and broad arbitration requirement it imposes. It exempts one category of suits: actions to enforce an arbitration award. The "Service of Suit" provision is explicitly subordinated to the "Law and Practice" provision. The "Service of Suit" provision cannot be a general carveout from the "Law and Practice" provision, because the "Law and Practice" provision does not permit the full range of suits for "failure . . . to pay any amount claimed to be due" under the policy. Rather, it only permits one type of suit to be pursued outside of English arbitration: suits to compel the other party to pay an amount due as a result of English arbitration under the "Law and Practice" clause. The "Service of Suit" provision can only apply to that narrow category of actions.

In addition to being the most reasonable interpretation of the contract language, this interpretation makes sense and allows the two provisions to work in concert. The "Law and

Practice" clause requires the parties to arbitrate the substance of their dispute in England under English law. The "Service of Suit" provision requires the defendants to submit to the jurisdiction of an appropriate American court for enforcement proceedings if that English arbitration produces an award in favor of the insured. The provisions work together to prevent costly fights over the appropriate forum for litigating issues arising out of this international contract.

Even if this harmonizing interpretation was not the most reasonable interpretation—which it is—and instead the provisions conflicted, the "Law and Practice" provision would still control. The "Law and Practice" provision controls if other provisions conflict with it, and the "Service of Suit" provision does not. To find otherwise would rewrite the parties' contract, which the court will not do.

## IV. Conclusion

For the reasons stated above, the TRO is dissolved and the application for a preliminary injunction is denied. The defendants must file any motion to dismiss in favor of arbitration in England no later than May 1, 2017.

SIGNED on April 13, 2017, at Houston, Texas.

                                                    _____
                                                                    Lee H. Rosenthal
                                                            Chief United States District Judge